UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DELTA RF TECHNOLOGY, Inc.,
A Nevada corporation,

    Plaintiff,

v.                              CASE NUMBER: 5:09-CV-373-OC-10GRJ

RIIMIC, LLC d/b/a SUNAIR
ELECTRONICS, a Florida limited
liability corporation, and COMMUNCIATIONS
HOLDINGS, LLC, a Florida limited liability
company f/k/a SUNAIR ELECTRONIC'S, LLC,

    Defendants.
_____/

**DEFENDANT RIIMIC, LLC's MOTION TO AMEND AND INCORPORATED MEMORANDUM OF LAW**

    RIIMIC, LLC respectfully requests, under Fed. R Civ. P. 15(a)(2), that the Court grant it leave to amend its pleadings to add one affirmative defense and four compulsory counterclaims.[1] Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and is routinely granted in absence of undue delay, bad faith, dilatory motive, or undue prejudice. *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994). As explained below, any delay in RIIMIC's proposed amendment flows from the parties' repeated attempts to settle this matter, and otherwise this motion raises none of the concerns that justify denying it.

                I.      **Introduction and Overview**

    Approximately one year ago, the operating parties to this lawsuit—Plaintiff Delta RF Technology Inc. and Defendant RIIMIC, LLC (respectively "Delta" and "RIIMIC")—attempted to reach a negotiated solution to their dispute. That attempt failed, and on October 16, 2009, Delta filed this lawsuit. RIIMIC requested—and received from this Court—two brief extensions of time to file its answer while the parties

---

[1]    RIIMIC's proposed First Amended Answer, Affirmative Defenses, And Counterclaim is attached hereto as Exhibit A.

1

continued to discuss settlement. RIIMIC answered and counterclaimed on November 30, 2009. After undersigned counsel substituted for RIIMIC's initial counsel on December 18, 2009, counsel for both parties agreed to try again to reach a negotiated resolution of this matter.[2] Accordingly, on February 9, 2010 the parties once more agreed to meet face-to-face. That agreement to meet became an agreement to mediate.

Calculating that mediation would be successful, the parties sought to conserve judicial resources, as well as the parties' resources so that they would be available for utilization as part of a potential settlement. Accordingly, they refrained from actively litigating until mediation took place. On May 5, 2010 the parties engaged Brian F. Spector to serve as mediator. The earliest date in which the parties, their counsel, and Mr. Spector were available was June 2, 2010. That day, after twelve hours of negotiation, the parties reached and signed a settlement agreement that resolved the dispute, but which would not become irrevocably binding for fourteen days.

Before the fourteen-day period expired, the agreement was terminated. Notwithstanding the agreement's termination, the parties continued to negotiate an amended settlement agreement until June 22, when it became clear that no settlement could be reached. The parties exchanged their first discovery requests three days later, on June 25, 2010. To date, no documents have been produced and no depositions have been set. In short, the actual litigation of this case by both sides effectively began about one week ago.

Reflecting these circumstances, RIIMIC respectfully requests, under Fed. R Civ. P. 15(a)(2), that the Court grant it leave to amend its pleadings to add one affirmative defense and four compulsory counterclaims. Despite the parties' repeated attempts to reach a settlement of this matter prior to engaging in full-scale litigation, Delta now opposes this request.

A.   **The parties**

**RIIMIC** is a closely-held company headquartered in Ft. Lauderdale. It designs and builds high-frequency communications systems for military and commercial customers under the trade name Sunair Electronics (http://sunairholdingsllc.com). RIIMIC bought that trade name and certain other assets from

---

[2]   See the Affidavit of Jorge Schmidt, attached hereto as Exhibit B.

2

the company formerly known as Sunair Electronics, LLC on February 5, 2009. RIIMIC employs approximately sixty people.

**Delta** is a closely-held company based in Reno, Nevada. It designs and manufactures radio frequency amplifiers and accessories. It is owned and operated primarily by Sarkis Kazarian and, upon information and belief, employs approximately twenty people.

Co-defendant **Sunair Electronics, LLC** is unrepresented and is in default.

B.   Summary of the dispute

This case concerns the breach of an installment contract for specially manufactured goods, namely, eight high-power (10kW) radio amplifier systems built for NATO, to be installed in various locations in Spain. The contract has three components: two purchase orders dated May 12, 2008 and March 2, 2009 (respectively, the First and Second Purchase Orders), as amended by an agreement between RIIMIC and Delta dated March 9th, 2009 (March 9th Agreement). The value of the entire contract is approximately two million dollars.

Delta built only the first two systems. According to the Second Purchase Order, these two systems were to have been delivered to RIIMIC on March 9, 2009. However, the units were not shipped from Delta's facilities in Reno to the Canary Islands until May 2009, after undergoing some initial testing at Delta's factory.

Delta claims that RIIMIC has not paid the balance that it owes on the first two systems. RIIMIC counterclaimed that the systems were delivered late and were nonconforming, and that it incurred substantial costs in having to develop and build substitute units in-house, which have since been completed and are awaiting installation in the Canary Islands, in place of the non-performing systems shipped by Delta.

C.   RIIMIC's proposed amendments

RIIMIC seeks to add the affirmative defense of revocation of acceptance; two counterclaims for breach of warranty (Count II for Breach of Express Warranty and Count III for Breach of Implied Warranty); and two counterclaims arising from Delta's representations to RIIMIC immediately before RIIMIC issued the Second Purchase Order (Count IV for Fraud in the Inducement and Count V arising

under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). The facts underlying these amendments span the same period of time covered by the current pleadings and discovery requests.

## II. Analysis

**A. Legal standard**

Under Fed. R. Civ. P. 15(a)(2), leave of the court allowing a party to amend its pleading "shall be freely given when justice so requires." In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified a number of factors to be considered in deciding on a motion to amend under Rule 15(a):

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Id*. at 182. *Accord Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994); *Warner v. Alexander Grant & Co.*, 828 F.2d 1528, 1531 (11th Cir. 1987). Fed. R. Civ. P. 15 "evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-598 (5th Cir. 1981).

**B. The proposed amendment does not prejudice Delta.**

"Prejudice," in this context, involves "serious impairment of [the non-movant's] ability to present its case." *Harter v. GAF Corp.*, 150 F.R.D. 502, 509 (D.N.J. 1993). The nonmoving party must do more than simply claim to be prejudiced; it must show that it was "unfairly disadvantaged" or "deprived of opportunity to present facts or evidence." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F. Supp. 181, 186 (E.D. Pa. 1991). Delta is unable to do this, for two reasons.

<u>First</u>, Delta will have sufficient time to take whatever discovery might be warranted by the amendments because the parties began to take discovery only one week ago, and because discovery in this matter is unlikely to be extensive, given the discrete timeframe and events. *See Bechtel v. Robinson*, 886 F. 2d 644, 653 (3d Cir. 1989) ("since the parties were still engaged in initial discovery at the time this amendment was proposed, the amendment will not delay the bringing of this case to trial."); *Bryn Mawr*

*Hosp.*, 776 F. Supp. at 186 (allowing amendment where "[t]he trial date is not imminent, and discovery has not begun."). Indeed, precisely because Delta has not until this past week begun to seek discovery, it is in essentially the same position that it would have been had RIIMIC asserted these additional claims and defenses at the beginning of the case. It will not have to expend any additional effort re-taking depositions or seeking additional documents, as none of this has as yet occurred.

Second, far from being a departure from the current case, the amendments are closely and logically related to the issues as currently framed. They cover the same time period, involve the same parties, and focus on the same issues: the contract and the systems' performance. Indeed, Delta was sufficiently on notice of the thrust of RIIMIC's proposed amendments that all of RIIMIC's documents relating to the amendments fall under Delta's First Request for Production of Documents.[3]

**C.  RIIMIC did not unduly delay moving for leave to amend.**

Delay, in itself, is an insufficient ground to deny leave to amend a pleading. *Datascope Corp. v. SMEC, Inc.* 962 F.2d 1043, 1045 (Fed. Cir. 1992). Indeed, "mere passage of time" should not result in refusal of leave to amend; "it is only undue delay that forecloses amendment." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

There has been no undue delay in the making of this motion. Delay, to the extent that it is present here, was not caused by dilatoriness but by the parties' refraining from full-scale litigation while they attempted to carry out the judicial policy favoring settlement, and their decision to minimize the waste of resources in the hope that they would be able to come to terms. *See Cotton v. Hinton*, 559 F.2d 1326, 1330-1331 (5th Cir. 1977)("It is often said that litigants should be encouraged to determine their respective rights between themselves."). Unfortunately, settlement could not be reached. *Cf. Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350(BSJ)(KNF), 2008 WL 4865194 *2 (S.D.N.Y. Oct. 31, 2008) ("active litigation in this action was, at the parties' request, suspended for a period, while mediation efforts were pursued by counsel to the respective parties in litigation pending in California. Approximately four weeks

---

[3] For example, Delta has requested that RIIMIC produce "All documents evidencing that the Equipment did not perform as warranted" (Request 23); "All document evidencing RIIMIC'S revocation of acceptance of the Equipment" (Request 22); "All documents supporting your claim that the Equipment was defective" (Request 20); "All documents evidencing or discussing the Equipment not performing according to any specifications" (Request 15); "All documents received from Delta RF discussing and referring to the Equipment" (Request 3); and "All documents evidencing any communications with Delta RF regarding the Equipment" (Request 4).

after active litigation in the instant action resumed, the defendants sought leave to assert their counterclaims.").

An additional reason for the relatively recent vintage of these claims is RIIMIC's discovery of facts of which it had been unaware when it filed its counterclaim in November 2009. These facts inform the proposed Counts IV (Fraud in the Inducement) and V (FUTDPA). After Delta's systems failed to perform, RIIMIC had to develop and build substitute systems in-house under extreme time pressure. The expertise it gained in doing so—expertise which only began to be developed in earnest in the fourth quarter of 2009—allowed it to evaluate anew Delta's representations in late February and early March, 2009, concerning the state of completeness of the systems and Delta's ability to perform. This evaluation led RIIMIC to conclude that Delta's representations were unsupported by fact. *See Eng-Hatcher* at \*2. ("It is not uncommon, during the pretrial discovery phase of an action, while the parties are examining closely the claims and defenses that have been asserted, for information to emerge that causes a litigant to assess the action in a different light, one informed by a factual analysis prompted by the contentions of the adversary party.").

D.  **RIIMIC offers the amendments in good faith**.

In the context of a Rule 15(a) motion to amend, bad faith is demonstrated by "tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate." *Dussouy*, 660 F.2d at 599. In this case, there are no pending motions, dispositive or otherwise, that the amendments are designed to circumvent, nor has the Court considered, much less passed on, any theory of the case. *Cf. Bamm, Inc. v. GAF Corp.*, 651 F.2d 389, 391 (5th Cir. 1981)(allowing amendments after adverse summary judgment ruling).

E.  **Denial of the motion would prejudice RIIMIC**.

In evaluating a motion for leave to amend, a court "may weigh in the movant's favor any prejudice that will arise from denial of leave to amend." *Dussouy*, 660 F.2d at 598. *Accord Bamm, Inc.*, 651 F.2d at 391. That consideration arises "only if there are substantial reasons to deny the amendment. Otherwise, Rule 15(a) requires the trial judge to grant leave to amend whether or not the movant shows prejudice." *Id*. In this case, there are no reasons, substantial or otherwise, to deny RIIMIC's amendment.

However, even if there were, the prejudice that RIIMIC would suffer would far exceed any equities that argue in favor of that denial. Under Fed. R. Civ. P. 13(a), the proposed counterclaims are compulsory in that they are logically related to Delta's claim. *See Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357, 1361 (5th Cir. 1979). Thus, it is very likely that if RIIMIC cannot assert these counterclaims in this action it will lose them, and that loss would cause RIIMIC severe prejudice, particularly in light of the facts set forth above.

### III.   Conclusion

Unfortunately, despite expending considerable time and effort, the parties were unable to resolve this dispute through mediation, and must move forward with litigation. That the parties placed their litigation efforts on hold while they attempted to reach a settlement harmed no one, and litigants should be encouraged to do so if matters like these are to be resolved efficiently and at the least cost to the parties and the judicial system. This is so even when, as here, such efforts are unsuccessful. For that reason, RIIMIC should not be made to sacrifice its compulsory counterclaims for engaging in this process. This case stands essentially where it did when it was filed, and neither party is prejudiced by starting from that point with the amendments as proposed. The issues to be litigated and the discovery to be done are discrete and limited. This motion is being made within a week of the parties' service of their initial discovery requests. No depositions have been taken (or even noticed), nor has the Court ruled on the merits of any claim or theory of the case. In sum, neither undue prejudice, undue delay, dilatoriness, nor bad faith are present, and the presumption of liberal amendment should control.

**Dated: 2 July 2010**.

        Respectfully submitted,

        /s/ Jorge Schmidt
        Jorge Schmidt, Esq.
        Florida Bar No. 781711
        KOZYAK TROPIN & THROCKMORTON, PA
        2525 Ponce de Leon, 9th Floor
        Miami, Florida 33134
        (305) 372-1800
        (305) 372-3508 (Facsimile)
        js@kttlaw.com

        **ATTORNEY FOR DEFENDANT RIIMIC, LLC**

**RULE 3.01(g) CONFERENCE CERTIFICATE**

 I hereby certify that counsel for RIIMIC, LLC conferred with counsel for Delta RF Technology, Inc. concerning this motion, and that counsel for Delta RF Technology, Inc. opposes it.

        /s/ Jorge Schmidt
        Jorge Schmidt, Esq.
        Florida Bar No. 781711
        KOZYAK TROPIN & THROCKMORTON, PA
        2525 Ponce de Leon, 9th Floor
        Miami, Florida 33134
        (305) 372-1800
        (305) 372-3508 (Facsimile)
        js@kttlaw.com

        **ATTORNEY FOR DEFENDANT RIIMIC, LLC**

**CERTIFICATE OF SERVICE**

 I hereby certify that on July 2, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

        /s/ Jorge Schmidt
        Jorge Schmidt, Esq.
        Florida Bar No. 781711
        KOZYAK TROPIN & THROCKMORTON, PA
        2525 Ponce de Leon, 9th Floor
        Miami, Florida 33134
        (305) 372-1800
        (305) 372-3508 (Facsimile)
        js@kttlaw.com

        **ATTORNEY FOR DEFENDANT RIIMIC, LLC**